IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ARTURO CORREA, et al.

    Plaintiffs

v.

CRUISERS, A DIVISION OF KCS
INTERNATIONAL, INC, et al.

    Defendants

Civil No. 97-1105(SEC)

**OPINION AND ORDER**

Pending before the Court are two motions for summary judgment filed by co-defendants Cruisers, a division of KCS International, Inc. ("Cruisers") **(Docket #29)** and Crusader Engines, Thermo-Power Corporation, a Thermo Electron Company ("Crusader") **(Docket #33)**. Plaintiffs filed a consolidated opposition to these motions **(Docket #36)**, which was later supplemented with a motion including a recent decision of the Puerto Rico Supreme Court, to which defendants filed oppositions. For the reasons stated below in this Opinion and Order, defendants' motions for summary judgment **(Dockets #29, 33)** are **DENIED**.

**Factual Background**

As is mandated by the standard governing motions for summary judgment, discussed in detail, infra, we shall recount the relevant facts in the light most favorable to the non-movant, in this case, plaintiffs.

On March 22, 1995, plaintiffs purchased a 1995 Cruisers 3570-Esprit motor yacht (the "Cruisers yacht"), manufactured by defendant Cruisers, through People's Marine, its agent in Puerto Rico. People's Marine is operated by Mr. Guillermo Cidre. The total purchase price of the Cruisers

**Civil No. 97-1105(SEC)** 2
_____

yacht was $132,500.00, for which plaintiff gave a $10,000 deposit on March 22, 1995, and paid the remaining balance upon delivery of the vessel, on June 11, 1995. It is an undisputed fact that at the time of the purchase of the vessel, plaintiffs were unable to negotiate any of the terms established by Cruisers in its Limited Warranty.

The Cruisers Yacht was fitted with two 1995 T454LXI FWC Crusader engines ("Crusader engines"), manufactured by defendant Crusader.

As stated above, the vessel was delivered to plaintiffs on June 11, 1995. In its maiden voyage, plaintiffs began to encounter problems with both Crusader engines, as well as other appurtenances of the vessel. Immediately upon returning from the initial trip on the Cruisers yacht, plaintiff called Mr. Cidre of People's Marine to inform him of the problems he had encountered during the trip to Fajardo.

In response to plaintiff's complaint, Mr. Cidre and Mr. Osmani del Pino, a mechanic for People's Marine, traveled to Puerto del Rey Harbor where they inspected the vessel's engines. After said inspection, they informed plaintiff that the engines were working perfectly and that the problems he experienced on the trip to Fajardo were just "breaking-in problems". At that time, the total running time of the engines was 2-3 hours.

On June 16, 1995, plaintiff informed Mr. Cidre that certain equipment was lacking from the vessel, which he had already paid for. These included the VHF radio, the generator sound shield, and a fire extinguisher. In addition, plaintiff also complained that the compass was defective and that the macerator pump used to flush the toilet was not working.

On July 3, 1995, plaintiff advised Mr. Cidre that four items that were supposed to be included with the Cruisers yacht were missing, that eleven items on board needed to be repaired; he also

**Civil No. 97-1105(SEC)**                                                                 3

demanded a credit for the radio, which he had purchased himself because it had not come with the vessel as was promised.

In July, 1995 plaintiff embarked on a trip to the U.S. and British Virgin Islands with his family. The first leg of the trip to St. Thomas was uneventful, but soon thereafter they encountered multiple problems with the engines. While they were at the island of Tortola the engines would not start and once they did, they continued running roughly and shutting off. Due to these problems, plaintiffs cut short their vacation and returned to Fajardo; during the return, both engines constantly ran roughly.

Upon the return from this trip, plaintiff informed Mr. Cidre of the electrical problems that they had experienced during their trip. In response to plaintiff's complaints, Mr. Cidre requested that he take the vessel to the San Juan Marina in order to inspect the engines. Between Fajardo and San Juan, the engines malfunctioned twice. Mr. Cidre checked the engines and informed plaintiff that they were working perfectly.

On July 26, 1995, plaintiff informed Cruisers of the problems that he had encountered with the engines during his trip to the Virgin Islands, as well as those that he had encountered with other appurtenances of the Cruisers yacht. Because he had not received any response, on August 7, 1995 plaintiff wrote Cruisers a follow-up letter. In response to both letters, Cruisers and/or Crusader sent People's Marine some additional fuel pumps for the engines, which were installed by People's Marine mechanic Mr. del Pino during September, 1995.

After the installation of the fuel pumps, plaintiff took the vessel with his son with the intention of returning the same to Fajardo. During the trip, he encountered further problems with the engines, as they both shut off. Plaintiff called Mr. Cidre from his cellular phone and returned

**Civil No. 97-1105(SEC)**                                                                 4

to San Juan Bay Marina. On the trip back to San Juan, both engines constantly malfunctioned. In San Juan, plaintiff and Mr. del Pino went offshore to test the engines, and encountered the same difficulties. Upon their return to San Juan, they summoned Mr. Cidre.

Mr. Cidre then boarded the vessel, and they proceeded to go offshore again to test the engines. While they were exiting the San Juan Bay Marina, they once again encountered problems with the engines and were forced to drop anchor in order to avoid a collision with a large French Navy vessel anchored next to Isla Grande Airport. They were later able to return to San Juan Bay Marina, but continued to experience problems with the engines.

After the fuel pumps were installed and verified, plaintiff was assured that all problems with the engines had been corrected. After he received these assurances, he decided to sail to Fajardo with his family, a sail which was uneventful.

Once they had returned to Fajardo, plaintiff and his family planned a second trip to the U.S. and British Virgin Islands. Once they reached St. Thomas, they encountered engine trouble and were unable to start the engines for about forty-five minutes. Upon their exit from the St. Thomas bay, they once again encountered engine trouble and required assistance from two vessels; they continued to experience engine trouble until they reached the channel. On their return to Puerto Rico, they again encountered engine trouble in the vicinity of Culebra.

Because he had been advised that once the fuel pumps were installed, he would not encounter the same engine malfunctions, plaintiff wrote to Cruisers to apprise them of the problems that he had experienced with his Cruisers yacht. In that letter, plaintiff told Cruisers that he had purchased a "lemon", that he wanted to annul the contract; he asked for the return of the money within fifteen days.

In response to the various letters sent by plaintiff, Cruisers sent plaintiff a letter advising him that all complaints about the performance of his Cruisers yacht should be directed through the dealer, People's Marine. Following Cruisers' instructions, plaintiff gave Mr. Cidre of People's Marine a fifteen-day term in which to fix his Cruisers yacht or return to plaintiff the monies he had paid for it.

Plaintiff was then advised that he needed to bring the vessel to San Juan Bay Marina because Cruisers and Crusader were going to send a representative on October 11, 1995 to change and upgrade the fuel system and computer of the engines. During the trip from Fajardo to San Juan, plaintiff continued to encounter engine trouble throughout the entire voyage.

On October 21, 1995, Cruisers and Crusader sent Mr. Paul Dopke, a mechanic, to Puerto Rico to inspect the engines installed on board plaintiff's Cruisers yacht. Upon inspecting the engines, Mr. Dopke informed plaintiff that the booster pumps that had been installed on the vessel at Cruisers' request had been installed on the wrong side of the fuel line. Instead of being on the supply side, they had been installed on the return side of the line, the side that leads back to the fuel tank. This error made the problem that plaintiff was experiencing with the Crusader engines worse, not better. Once Mr. Dopke had performed the necessary work on the vessel, plaintiff was assured that all problems had been corrected.

The following weekend there was an offshore race in San Juan Bay which plaintiff attended with his family. By coincidence, plaintiff dropped anchor to watch the race next to Mr. del Pino and Mr. José Rodríguez, both of People's Marine. After the conclusion of the race, plaintiff and his family proceeded to return to San Juan Bay Marina and immediately after turning on the engines, encountered severe engine problems; they were only able to avoid a collision with another vessel by

**Civil No. 97-1105(SEC)**                                                                                          6

timely dropping the anchor.

Plaintiff then summoned Mr. del Pino and Mr. Rodríguez to assist him. Mr. del Pino helped them back to the marina, and throughout the return trip they continued to encounter engine problems. At the marina, both engines were checked, and once again, plaintiff was assured that they were in perfect working condition.

Because he was tired of the continued problems he was having with his Cruisers yacht, plaintiff advised his attorney to contact Mr. Jim Viestenz of Cruisers and Mr. Gerald Scott of Crusader. During a conversation with them, plaintiff's counsel was assured that the problems that plaintiff was encountering would be corrected if plaintiff granted them one more opportunity to address them.

Plaintiff granted defendants' request, and during the month of December, 1995 defendants inspected the Cruisers yacht and once again assured plaintiff that all problems with the vessel had been fixed.

Between December, 1995 and March, 1996 plaintiff was unable to use the Cruisers yacht because Cruisers had to send Mr. del Pino some parts that needed to be installed on board the vessel. Particularly necessary was the replacement of the engines' salt water hoses which were full of blisters and could have potentially caused the vessel to sink. In addition, Crusader indicated that the propellers needed to be repitched, and Cruisers promised to provide a number of spare parts to replace the defective appurtenances on board the vessel.

After the installation of the new hoses, on April 1996, plaintiff sailed his Cruisers yacht on one subsequent occasion. He set sail with his wife and children, as well as his nephew and his girlfriend, on a trip to Culebra. About halfway there, he encountered the same problems with the

<u>Civil No. 97-1105(SEC)</u>                                                                                    7

engines. After that time, plaintiff's family has refused to sail in the boat and he has not used the boat again, except the one time that the representatives from Crusader requested an inspection following the filing of the complaint in the above-captioned case.

On June 18, 1996 plaintiff again asked Cruisers to honor the promises made as a result of their visit of December, 1995. Cruisers did not respond to plaintiff's letter. By this time, plaintiff had lost all confidence in the safety of the Cruisers' yacht, as well as defendants' desire and ability to honor their warranties. On July 20, 1996, plaintiff began to demand from People's Marine that his defective vessel be exchanged for another Cruisers' vessel.

Initially, Mr. Cidre accepted plaintiff's request to exchange the defective vessel for a safer one and gave plaintiff a list of options for a different boat so that he could present it to Cruisers. On August 20, 1996, plaintiff wrote to Mr. Cidre indicating that he would be amenable to exchange his defective Cruisers yacht for a new one, provided that Cruisers accepted his offer within ten days.

Cruisers, however, refused to exchange the vessel, claiming that the terms of its "Limited Warranty" do not provide for the exchange of a defective boat.

Plaintiff avers that he has been stranded at sea because of the engines' malfunction on about twenty different occasions. Furthermore, he states that on more than ten occasions Mr. Cidre and other personnel from People's Marine have examined the Crusader engines installed in the Cruisers yacht in order to fix what is wrong with the boat, without success. Also, on three occasions, Cruisers and/or Crusaders have sent personnel to inspect and correct the problems with plaintiff's Cruisers yacht. This all occurred pursuant to about forty-six different phone calls made by plaintiff to People's Marine and/or co-defendants in an effort to remedy the vessel's problems.

According to plaintiff's expert witness in mechanical engineering, Mr. Ramón V. Echeandía,

**Civil No. 97-1105(SEC)**                                                                                          8

the mechanical problems of the Crusader engines installed on board the vessel are due to "a defective, incorrect or improperly matched fuel management system", which "will cause the foul-up of the spark plugs, and the engines will suddenly backfire and stall." In Eng. Echeandía's opinion, the problems with the fuel management system render the use of the vessel "hazardous and ... not acceptable in any type of vessel." Furthermore, Mr. Edgardo J. Jiménez, plaintiffs' expert marine surveyor, has stated that the defects of the propulsion system of the Cruisers yacht render the vessel unseaworthy.

As a result of the discovery undertaken in the above-captioned action, Cruisers produced a letter dated October 8, 1996, from Cruisers to Ms. Gayle Ross, wherein it discloses that the Crusader engines suffer from "fuel vapor locking in the extreme heat of Puerto Rico." In his deposition, Mr. Cidre confirmed that at the time of the purchase of the Cruisers yacht by plaintiff, Crusader was aware that is engines suffered a "vapor lock" defect, which he personally experienced while on board plaintiff's vessel. Furthermore, Mr. Cidre confirms that the defects in the vessel's engines render the Cruisers yacht unseaworthy.

Plaintiff and his family refuse to sail in the Cruisers yacht; however, plaintiff avers that the vessel is berthed at Marina Puerto del Rey and that he checks on it once a week and starts the engines for about ten minutes.

In his deposition, Mr. Kenneth Hayes, Cruisers' Customer Service Manager in charge of warranty issues, stated that during the past ten years Cruisers has received four warranty claims for defects arising from Crusader engines installed on board its vessels. Of those four, in 1997 Cruisers exchanged a defective vessel for a new one, contrary to the claims it now asserts that such remedy is precluded by the terms of its Limited Warranty.

**Summary Judgment Standard**

The First Circuit has cogently noted that:

> [s]ummary judgment is a means of determining whether a trial is actually required. It is appropriately granted when the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Thus, in order to defeat a properly crafted summary judgment motion, the party opposing it must demonstrate that a trialworthy issue looms as to a fact which could potentially affect the outcome of the suit.

Serapión v. Martínez, 119 F.3d 982 (1st Cir. 1997). See also McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).

In determining whether to grant a summary judgment, the Court may not weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. citing Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d. 932, 936 (1st Cir. 1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the nonmoving party. Casas Office Machines, 42 F.3d at 684.

The mere existence of a factual dispute is not, however, enough to defeat summary judgment. United Structures, Inc. v. GRG Engineering, S.E., 927 F. Supp. 556, 560 (D. Puerto Rico 1996). In those cases where there are factual disputes, summary judgment will be deemed proper if the unresolved facts are not genuine and material to the resolution of the case. Corporación Insular de Seguros v. Reyes Muñoz, 849 F. Supp. 126, 132 (D. Puerto Rico 1994). For a dispute to be "genuine", "the factual controversy 'must be sufficiently open-ended to permit a rational factfinder

**Civil No. 97-1105(SEC)**                                                                                                                                     10

to resolve the issue in favor of either side'." <u>Lynne Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.</u>, 124 F.3d 47 (1st Cir. 1997). See also <u>U.S. v. One Parcel of Real Property</u>, 960 F.2d 200, 204 (1st Cir. 1992); <u>Boston Athletic Assn. v. Sullivan</u>, 867 F.2d 22, 24 (1st Cir.1989). By like token, for a dispute to be deemed "material," the fact must be one that might affect the outcome of the suit under the governing law. <u>Morris v. Government Development Bank of Puerto Rico</u>, 27 F.3d 746, 748 (1st Cir. 1994).

**Applicable Law and Analysis -- Whether plaintiffs have a cause of action under the Civil Code**

In the above-captioned case plaintiffs seek the rescission ("resolución") of the vessel's purchase agreement pursuant to Article 1077 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3052. They also demand the return of the purchase price of the vessel together with all costs and interests pursuant to Articles 1373, 1374, and 1375 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 3841-3843. Finally, they seek the payment of damages under Articles 1077, 1054, and 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 3052, 3018, and 5141, as a result of defendants' alleged negligent acts and omissions.

**Whether the vessel's purchase agreement may be rescinded under Article 1077[1]**

As stated above, one of the remedies sought by plaintiffs is the rescission of the vessel's purchase agreement. Both defendants argue that this remedy is not available to plaintiffs. Cruisers

---

[1]Article 1077 of the Puerto Rico Civil Code, codified at 31 L.P.R.A. § 3052, provides:
The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.
The person prejudiced may choose between exacting the fulfillment of the obligation or its rescission, with indemnity for damages and payment of the interest in either case. He may also demand the rescission, even after having requested its fulfillment, should the latter appear impossible.
The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.
This is understood without prejudice to the rights of third acquirers, in accordance with sections 3496 and 3499 of this title, and with the provisions of the Mortgage Law and of the Property Registry, sections 2001 et seq. of Title 30.

AO 72A
(Rev.8/82)

avers that this remedy would only be available to plaintiffs if defendant had not complied with one of the core obligations of the contract, and that such is not the case since parties complied with their mutual obligations under the sales contract; plaintiff paid the purchase price and Cruisers delivered the vessel. In a similar vein, Crusader argues that Article 1077 is inapplicable because under the terms of the Limited Warranty covering the engines, the only defect found was regarding the fuel systems, which was allegedly corrected in September, 1995.

The Puerto Rico Supreme Court has held that when one of the parties to a reciprocal agreement fails to comply with its obligations, the party prejudiced by the breach can either request the specific performance of the obligation or request that the contract be rescinded, along with the payment of costs and accrued interest. Ramirez Anglada v. Club Cala, 123 D.P.R. 339, 347 (1989). However, the Court has emphasized that in order for rescission to be available, the breached obligation must be essential to the contract or "that its compliance constitutes the cause for the contract for the other party. Id. at 347-348 (translation ours).

A contract of purchase and sale is defined in the Puerto Rico Civil Code as one where "one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same." Article 1334, 31 L.P.R.A. § 3741. Furthermore, the Puerto Rico Civil Code prescribes that "[a] vendor is bound to deliver and warrant the thing which is object of the sale." Article 1350, 31 L.P.R.A. § 3801. By virtue of the warranty that vendors are required to ascribe to their products, a vendor shall warrant to the buyer "the legal and peaceful possession of the thing sold" and "that there are no hidden faults or defects therein." Article 1363, 31 L.P.R.A. § 3831.

Furthermore, Article 1373 of the Puerto Rico Civil Code obligates sellers to warrant for

hidden defects in the sold product "should they render it unfit for the use to which it was destined, or if they should diminish said use in such manner that had the vendee had knowledge thereof he would not have acquired it or would have given a lower price for it." Article 1373, 31 L.P.R.A. § 3841.

In its recent decision, <u>Domínguez Talavera v. Caguas Expressway Motors, Inc.</u>, 99 JTS 85, the Puerto Rico Supreme Court reiterated the requirements set forth in Article 1373 so that a redhibitory action may proceed. <u>Id.</u> at 1067. These are: (a) that the item sold have a defect; (b) that the defect be serious: making the item unfit for its destined use, or diminishing its utility to an extent that if the buyer had known it, he would not have acquired it, or would have paid a lower price for it; (c) that the defect be hidden; (d) that it exist prior to the sale; and (e) that the action be filed within the action prescribed by the law. <u>Id.</u>

In that case, the Court also emphasized that the determination regarding the magnitude of the defects is essentially a question of fact, so that the factfinder, in this case the jury, is in the best position to make said determination. Defendants are correct in asserting that the most significant holding in the <u>Domínguez Talavera</u> case regards the deference due to a decision by an administrative agency. However, plaintiffs correctly point to the decision as a clarification of the requirements of a redhibitory action, pointing out that they have made out a prima facie case under Article 1373 that would preclude granting defendants' motion for summary judgment.

It is clear from the provisions of the Civil Code set forth above, as well as the applicable caselaw, that plaintiffs may seek the rescission of the purchase agreement if the seller has failed to comply with one of the essential obligations of the contract. Plaintiffs correctly aver that defendants did not comply with the contract merely by delivering the vessel in question; they were also

obligated by the provisions of the Civil Code to warrant that the vessel was free from hidden defects. Delivery of a vessel with hidden defects clearly cannot constitute compliance with the essential obligations of a sales contract, and if we find that the vessel's defects were present at the time of delivery of the same, we must find that defendants failed to comply with one of the essential obligations of the contract. Under those circumstances, rescission of the contract would be available to plaintiffs.

In light of that, we must evaluate whether sellers failed to comply with their legal obligation to warrant that their product was free from hidden defects. Notwithstanding defendants' assertions to the contrary, the evidence presented may show that the engine defects were present from the time the vessel was delivered. It is plaintiff's sworn testimony that the engines began to malfunction on the vessel's maiden voyage from San Juan to Fajardo. Thus, it is at the very least a disputed material fact whether the engine's defects existed at the time that defendant Cruisers delivered the yacht to plaintiffs; it is prima facie evidence that the defects existed at the time of delivery that the malfunction of the vessel began the very first time it was sailed by plaintiff.

Furthermore, plaintiffs have presented testimony from two expert witnesses that bolster their contention that the engines' defects render the vessel unseaworthy. Furthermore, Mr. Cidre of People's Marine, Cruisers' dealer in Puerto Rico, confirms the fact that plaintiff has complained of engine trouble from the very beginning and that his mechanics have tried to fix the engines on at least six separate occasions, all to no avail. Finally, plaintiffs have presented a letter written by a Cruisers employee that verifies that Crusader engines have a vapor locking defect that renders them unfit for use in Puerto Rico.

In light of the above, the Court finds that plaintiffs have presented sufficient evidence that

Civil No. 97-1105(SEC)                                                                                          14
_____

defendants failed to comply with the essential obligation to deliver a vessel free of defects; as such, plaintiffs' claim of rescission of the contract under Article 1077 may not be dismissed.

### Whether plaintiffs have waived their action for breach of warranty under Article 1366[2]

Defendants argue that by accepting the Limited Warranties issued by them at the time of the sale of the vessel, plaintiffs have contractually waived an action for breach of warranty codified in Articles 1373, 1374, and 1375 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 3841-3843.

We have already discussed the provisions of Article 1373, which provides that the vendor shall warrant against hidden defects. In addition, Article 1374 provides: "The vendor is liable to the vendee for the warranty against faults or hidden defects in the things sold, even when they should be unknown to him. This provision shall not obtain if the contrary should have been stipulated and the vendor should not have been aware of said faults or hidden defects." 31 L.P.R.A. § 3482. Finally, Article 1375 provides: "In the case of sections 3481 and 3842 of this title the vendee may choose between withdrawing from the contract, the expenses which he may have incurred being returned to him, or demanding a proportional reduction of the price, according to the judgment of experts. *If the vendor knew of the faults or hidden defects in the thing sold and did not give notice thereof to the vendee, the latter shall have the same option, and furthermore, be indemnified for the losses and damages should he choose the rescission.*" 31 L.P.R.A. § 3843 (emphasis added).

In summary, Article 1373 obligates the seller to warrant that the product sold does not have any hidden defects. In turn, Article 1374 states that even if the seller did not know that the hidden

---

[2]Article 1366 of the Puerto Rico Civil Code, codified at 31 L.P.R.A. § 3834, provides:
If a vendee should have renounced the right of warranty in the case of eviction and it occurs, the vendor must deliver only the price which the thing had at the time of the eviction, unless the vendee has made the renunciation knowing the risk of eviction and submitting to its consequences.

**Civil No. 97-1105(SEC)**                                                                                                           15

defects existed, he is liable to the buyer, unless the parties have agreed otherwise. Finally, Article 1375 states that the buyer has the option of withdrawing from the agreement and receive the amounts paid by him, or to receive a reduction in the item's price, according to the judgment of experts. However, significantly, if the seller knew of the hidden defect at the time of the sale, the buyer has the option of rescinding the contract, *and to be indemnified for the losses and damages as a result of the rescission.*

Defendants correctly state that the Civil Code permits parties to contractually limit or extend their obligations under Article 1366, 31 L.P.R.A. § 3834. However, their argument that the acceptance of a Limited Warranty by a buyer at the time of purchase constitutes a contractual waiver of a buyer's right to sue for a breach of warranty and rescission of the sales contract under Article 1375 has been squarely addressed and rejected by the Puerto Rico Supreme Court.

In Ferrer v. General Motors Corporation, 100 D.P.R. 246 (1971), the Puerto Rico Supreme Court held that in order for a seller to comply with its essential obligations in a sales contract, it not only had to deliver the item, but also had to warrant to the buyer the pacific and useful utilization of the same. Id. at 254. To that end, the Court stated that the seller has an obligation to warrant that the item sold is free from hidden defects. In that case, a buyer sued the seller and manufacturer of a vehicle under Article 1375 claiming that the vehicle he had purchased was defective and unfit for its intended use due to a defect in the axle that caused the tires to wear at an excessive rate. The Court held that when a seller or manufacturer maintains in its Limited Warranty that its product is sold "free from defects in material and workmanship under normal use and service", in order to file an action under Article 1375 a consumer need only show that the product is defective and that the party being sued had the opportunity to fix the defect and was either unable or unwilling to fix it.

**Civil No. 97-1105(SEC)**                                                                                              16

Id. at 253.

Regarding the Limited Warranties issued by manufacturers and sellers, the Court reasoned that these should be strictly construed because they are contracts of adhesion over which terms the buyer had little, if any, opportunity to bargain. Thus, notwithstanding any terms contained in such Limited Warranties, the buyer of a defective product has a cause of action for the reimbursement of the price paid for the product against the seller and the manufacturer. The Court reasoned that "[i]f in our jurisdiction a party may file a tort action against the manufacturer of a product that causes damages, with more reason should an action against the manufacturer... proceed for the reimbursement of the price paid." Id. at 257 (translation ours) (internal citations omitted).

Therefore, it is clear from the applicable provisions of law and caselaw that plaintiffs have presented sufficient evidence to sustain a cause of action against defendants for breach of warranty. Furthermore, the Court finds that plaintiffs have presented sufficient evidence to sustain their claim for damages under Article 1375 as they have presented evidence that defendants knew of the engines' hidden defects at the time of the sale. Cf. Id. at 256 (plaintiff's claim of damages in tort would be dismissed as he had presented no evidence that seller knew of the hidden defects at the time of sale).

**Whether plaintiffs have failed to mitigate damages**

Defendants also argue that plaintiffs have failed to mitigate damages; however, they have failed to present any proof to bolster said allegation. Plaintiff has countered defendants' averments by swearing that he has kept the vessel in good condition by maintaining it berthed at Marina Puerto del Rey and checking on it on a weekly basis. Plaintiffs argue that the fact that they no longer sail in the vessel does not imply that they have failed to maintain it; defendants have presented no

<u>Civil No. 97-1105(SEC)</u>                                                                                          17

evidence to controvert that claim.

Furthermore, Crusader alleges that plaintiffs have refused its further attempts to service and repair the vessel. Plaintiffs counter this allegation by stating that plaintiff took the vessel to the dealer on at least ten separate occasions in an effort to have the vessel's engines repaired. In addition, in his deposition testimony, Mr. Cidre of People's Marine admitted that its mechanics attempted to fix the vessel on at least five or six occasions without success. Mr. Cidre even admitted that its mechanics do not have the expertise necessary to repair the engines and referred the vessel's repair to the manufacturer. Additionally, between September and December of 1995 the vessel's manufacturer attempted to fix the problem with the engines on three separate occasions, also without success.

The Court finds that plaintiffs correctly argue that defendants had ample opportunity to fix the problems with the vessel and they were unable to do so. Plaintiffs did not have to return to the dealer and/or manufacturer to afford them limitless opportunities to repair the vessel. Plaintiffs are therefore not estopped by their own actions from claiming the remedies above sought. In addition, defendants' argument that plaintiffs have failed to mitigate damages by failing to maintain the vessel in good condition is controverted by plaintiff's averment that the vessel is berthed at a marina and that he personally checks on it on a weekly basis. Thus, defendants' argument that plaintiffs have failed to mitigate damages must also fail.

**Whether the Limited Warranties preclude the remedies sought by plaintiffs**

Finally, Cruisers argues that the terms of its Limited Warranty expressly excludes any claims for defects of the vessel's engines. On the other hand, Crusader claims that it sold the engines to Cruisers and there is thus no privity for plaintiffs to make any claims under its own Limited

Warranty. Plaintiffs correctly state that defendants' positions are both mutually inconsistent as well as contrary to Puerto Rico law.

Plaintiffs correctly assert that the Puerto Rico Supreme Court has held that everyone in the chain of distribution of the product is jointly and severally liable for any defects in the same. This doctrine was first established by the Court in Ferrer, supra, and was recently reaffirmed by the Court in Aponte v. Sears Roebuck de P.R., Inc., 98 JTS 12. Thus, defendants' claims of limitations in its Limited Warranty as well as lack of privity with plaintiffs has been soundly rejected by the Puerto Rico Supreme Court and said arguments cannot be the basis for dismissal of plaintiffs' complaint by this Court.

**Conclusion**

Pursuant to the above discussion, defendants' motions for summary judgment **(Dockets #29, 33)** are **DENIED**. Parties are **ORDERED to FILE** any amendments to the Pretrial Order filed on May 21, 1998 **(Docket #23)** by **October 1, 1999**. At that time, the Court shall set the case for a Pretrial and Settlement Conference.

**SO ORDERED.**

In San Juan, Puerto Rico, this _13TH_ day of September, 1999.

SALVADOR E. CASELLAS
United States District Judge