IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ARTURO CORREA, et. al.

    Plaintiffs

v.     Civil No. 97-1105(SEC)

CRUISERS, A DIVISION OF KCS
INTERNATIONAL, INC., et. al.

    Defendants



**OPINION AND ORDER**

Before the Court is Plaintiffs' "Motion to Amend the Judgment Finding the Defendants Obstinate." **(Docket # 95)**. Along with this motion is an opposition filed by co-defendant Crusader Engines, Thermo Power Corporation, a Thermo Electron Company ("Crusader"), (Docket # 105), in which Cruisers, a Division of KCS International, Inc. ("Cruisers") joined, (Docket # 108). For the reasons stated below, Plaintiffs' motion, **(Docket #95)**, is **GRANTED IN PART AND DENIED IN PART**.

I.   **Factual Analysis**

After holding a jury trial in the above-captioned case, a Judgment was entered on March 23, 2000, finding the Defendants' jointly liable to the Plaintiffs for the amounts specified in the verdict form. (Docket # 93 ¶ 1). On March 28, 2000 the Plaintiffs filed a motion to amend the judgment,[1] claiming that "the defendants were obstinate in denying that the engines on board the plaintiffs' motor boat had malfunctioned after October 21, 1995, in failing to acknowledge that the engines

---

[1] Plaintiffs' motion was timely filed since Fed.R.Civ.P. 59(e) provides that any motions to amend a judgment must be filed "no later than 10 days after the entry of the judgment."

**Civil No. 97-1105(SEC)**                                                                                                           2

were defective and rendered the motor boat unfit for recreational navigation ... [and by] stubborn[ly] refus[ing] to engage in earnest settlement negotiations." (Docket # 95 at 2). In addition, the Plaintiffs alleged that the Defendants had unnecessarily prolonged the litigation in this case through their denial of all liability and failure to conduct *bona fide* settlement negotiations. (Id. at 6). Accordingly, they moved the Court to find the Defendants obstinate and in addition, to impose upon them the payment of $90,656.25 on attorneys' fees. For that purpose, Plaintiff points out to the following facts as probative of Defendants alleged obstinacy:

1. That prior to filing the present action, the Plaintiffs had attempted to negotiate in good faith a settlement with the Defendants through which the Defendants would replace Plaintiffs' defective motor boat with a new one. However, "through the testimony of Mr. Ken Hayes of Cruisers [presented at trial]" it was demonstrated that Defendants' only offer was to "upgrade" the Plaintiffs to a larger boat, giving their defective boat in "trade in" and paying an additional $195,000.00 to the Defendants. Defendants never offered the Plaintiffs a return of their purchase money, or a replacement of their defective boat. (Docket #95 at 5-6).

2. The testimonies of Mr. Guillermo Cidré, Mr. Osmani del Pino, Mr. Víctor Echeandía, Mr. Jaime Jiménez, and Plaintiffs' own testimony, established that after Mr. Paul Doppke of Crusader replaced the fuel lines of the engines installed on Plaintiffs' vessel on October 21, 1995, the engines failed again on at least two occasions.

3. The Defendants had knowledge of these motor failures because: (1) Mr. Cidré and Mr. del Pino, Cruisers' authorized dealers and agents in Puerto Rico witnessed one of the failures, and (2) on December 5, 1995, Mr. Jim Viestenz, President of Cruisers, Mr. Ken Hayes, Customer Service Manager of Cruisers, Mr. Gerald Scott, General Manager of Crusader, and

AO 72A
(Rev.8/82)

**Civil No. 97-1105(SEC)** 3

Mr. Andrew Prietz, Marine Service Manager of Crusader, came to Puerto Rico and conducted a number of sea trials of the plaintiffs' motor boat." (Id. at 7). During the trial, all those witnesses admitted that the reason for their trip to Puerto Rico was that "after Mr. Doppke ... replaced the fuel lines of the engines, the plaintiffs continued to complain that the engines had failed." (Id.) Therefore, Plaintiffs concluded that the Defendants were obstinate "[b]y denying that the engines had failed after Mr. Paul Doppke replaced the fuel lines ... in order to deny liability over the defective product..." (Id. at 8).

4. Defendants allegedly failed to conduct earnest settlement negotiations during a pretrial and settlement conference held before Visiting Judge Thomas J. Ward prior to the trial, when "the defendants offered the plaintiffs $20,000 in settlement." (Id. at 9). However, Plaintiffs indicate that by that time, they had already "incurred in twice that amount in attorneys' fees" only. In view of that posture, Plaintiffs went to trial. (Id.)

5. Once more, after the trial had already begun, the parties attempted to settle the case with the Judge's assistance. Plaintiffs inform that while the Judge recommended $177,000.00 for settlement, the Defendants were unwilling to settle for anything over $150,000.00. That amount was $27,000.00 less than the amount recommended by the Judge, and some $57,000.00 less than the amount finally obtained through the Judgment. (Id. at 9)

Co-defendants Cruisers and Crusader opposed Plaintiffs' motion for a finding of obstinacy on grounds that: (1) the pre-complaint conduct exhibited by the Defendants – in failing to propose a fair and reasonable settlement – is irrelevant for a finding of obstinacy since under Commonwealth Law, obstinacy "depends on a party's conduct in the course of litigation." (Docket #105 at 3) (quoting Dopp v. Pritzker, 38 F.3rd 1239, 1254 (1st Cir. 1994); (2) the Plaintiffs did not point to any

**Civil No. 97-1105(SEC)**                                                                 4

facts supporting a finding of obstinacy, (Id. at 3); (3) the Defendants successfully objected to and defeated plaintiffs' claims for emotional distress damages, (Id. at 4); and (4) "the evidence clearly established that the engines worked perfectly during the December 1995 sea trial; that no further complaints on the engines were heard for the following eight (8) months (until August, 1996); that after the August 1996 complaints the plaintiffs refused to allow the defendants access to the boats or engines; and that such denial of access to the boat continued through the filing of the complaint on January 27, 1997." (Id. at 4).

Moreover, the Defendants contended that they did not know that after Mr. Paul Doppke's visit on October of 1995, the engines failed again. First, they allege that "there were absolutely no allegations in the complaint, or in any pleading requiring a response prior to trial, of any engine failure after Mr. Doppke's October 21, 1995 visit." (Id. at 5) (emphasis added).[1] Second, Mr. Guillermo Cidré of Peoples' Marine allegedly was not an agent of Crusader in the fall of 1995. He apparently did not become so until Crusader's visit to Puerto Rico in December of 1995. (Id. at 5).

---

[1] A quick review of the record revealed that Defendants' allegations in this regard are false, since Plaintiffs' factually detailed complaint clearly stated that Defendants' attempt to correct the problem with the engines on October 21, 1995 was unsuccessful. (Docket # 1 ¶ 19). Not only that, the complaint also alleged that the Plaintiffs continued to communicate with the Defendants through letters, (Id. at ¶ 20), and that in response to their continued complaints, Defendants' top executives traveled to the Island on December 5, 1995 to review Plaintiffs' boat. Plaintiffs' alleged that even after their visit, the engines malfunctioned.

Defendants' answers to these allegations were that they lacked knowledge sufficient to form an opinion. (See Docket # 4 ¶ 8, Docket # 5). In fact, Crusader's answer to all of Plaintiffs' factual allegations was that they lacked knowledge sufficient to answer any of them. (Docket # 5). This conduct by itself constitutes obstinacy. See Vicente Fernández Mariño v. San Juan Cement Co., 118 D.P.R. 713, 118 P.R. Offic. Trans. 823, 830 (1987) ("[A]ttorneys must take special care when drawing their pleadings so as not to deny facts which they know or which may be easily verified . . . to deny allegations in an indiscriminate manner, even with the pet phrase 'for lack of information,' is an undesirable practice which attorneys should take special care to avoid.")

**Civil No. 97-1105(SEC)** 5

Third, Defendants allege that "there is no documented evidence in the trial of this case to suggest that after Mr. Doppke's visit the engines were not in perfect running condition." (Id.)[2]

## II. Analysis of Applicable Law

### A. Obstinacy

Since this is a case which was brought pursuant to this Court's diversity jurisdiction, the imposition of attorneys' fees is governed by P.R. R.Civ.P. 44.1; P.R. Laws Ann. tit. 32, App. III, R. 44.1 (1983) (Pocket Supp. 1997). Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994); Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir. 1994) ("Puerto Rico Rule 44.1(d) on attorneys' fees and 44.3(b) on pre-judgment interest are rules of decision that should be applied by the Federal Court sitting in diversity.") (citations omitted); De León López v. Corporación Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991).

P.R. R.Civ.P. 44.1(d) provides that: "In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorneys' fees which the court decides corresponds to such conduct." The main purpose of this rule is simply "**to impose a penalty** upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation." Vicente Fernández Mariño v. San Juan Cement Co., 118 D.P.R. 713, 118 P.R. Offic. Trans. 823, 830 (1987).

---

2   This allegation is also <u>false</u>, since the evidence presented by Plaintiffs at trial showed <u>exactly the opposite</u>. If anything, the Jury's Verdict confirmed Plaintiffs' allegations that the Cruisers yacht they purchased was defective, (Docket # 90 ¶ 1), and that Defendants were unable to effectively repair it. (Id. at ¶ 5). Since Defendants' appeal to the First Circuit was dismissed, the Jury's finding is now the law of the case.

AO 72A
(Rev.8/82)

**Civil No. 97-1105(SEC)**                                                                                                    6

Although P.R. R.Civ.P. 44.1(d) does not define the term "obstinately," this is a term of art which has been discussed at large by the courts. In particular, the Puerto Rico Supreme Court has stated that "obstinacy is an attitude which casts its shadow over the proceeding and which affects the sound operation and administration of justice. It also subjects the innocent litigant to the ordeal of the judicial process and unnecessary costs, and to retainment of professional services, including attorneys, with the usually exorbitant burden to his pocket." Id. at 829. A party shall be found obstinate if it "engages in actions which (a) make necessary litigation which could have been avoided, (b) prolongs the litigation unnecessarily, or (c) requires the other party to incur expenses in the pursuit of avoidable tasks." Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 24 (1st Cir. 1994).

An example of obstinacy is where a party risks litigating a case in which negligence appears *prima facie*. In that case the supreme court has stated that the party "should thus assume liability for its actions." Fernández Mariño 118 P.R. Offic. Trans. at 831. If a defendant answers the complaint and denies his total liability in those circumstances, he's been obstinate, even if he accepts the liability later on. Id. at 830 (citing Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985)). In addition, "[to] deny a fact knowing that it is true . . . constitutes obstinacy." Id. Therefore, the supreme court has stated that even "if the defendant does in fact believe that the amount sought is excessive and that is the only reason to oppose plaintiff's petitions" he should "frankly admit his liability, limiting the controversy to the fixing of the sum to be awarded." Id. at 831. A defendant should thus deny only that which in good faith he wishes to challenge. Id. at 831.

Finally, in making a determination of obstinacy, the courts consider the "personality of the case," because that which constitutes obstinacy at one stage of the litigation, may not be obstinate

**Civil No. 97-1105(SEC)** 7

at another. At the same time, "obstinacy may be found to characterize a particular form of conduct in one case but not in another." Dopp v. Pritzker, 38 F.3d at 1253-54.

In this particular case we find that co-defendants Cruisers and Crusader have both incurred in an obstinate conduct by denying a fact which was known to them and proven at trial, namely, that after Mr. Doppke of Crusader replaced the vessel's fuel lines on October 21, 1995, the engines failed again. The Defendants knew of this fact because: (1) Mr. Cidré and Mr. del Pino of People's Marine, Defendants' authorized dealers and agents in Puerto Rico, both witnessed one of the failures; and (2) on December 5, 1995, the President of Cruisers—Mr. Jim Viestenz—, Cruisers' Customer Service Manager—Mr. Ken Hayes—, Crusader's General Manager—Mr. Gerald Scott—, and Crusader's Marine Service Manager—Mr. Andrew Prietz—, all traveled to Puerto Rico in order to conduct a number of sea trials of the Plaintiffs' vessel, in response to their complaints that the engines had failed again. Co-defendants' denial of this fact all throughout the proceedings, and their even more surprising attempt to deny it again in their opposition to Plaintiffs' motion to amend the judgment, (Docket #105 at 5)[3], constitutes obstinacy, even more so after a jury found that the product was defective and that the Defendants were given a reasonable opportunity to repair it, yet failed. (Docket #90).

The Co-defendants' stubborn denial of the engines' failure after October 21, 1995 was compounded with their denial of all liability. It was this attitude which led them to propose a settlement of $20,000 during the settlement negotiations conducted with the assistance of Judge Ward and $150,000 after the trial had already begun.

---

[3] See n. 1-2, supra.

**Civil No. 97-1105(SEC)**                                                                                              8

Defendant's obstinacy in denying all liability and their knowledge of the engines' failure after October of 1995 is not diminished by their successful defense from Plaintiffs' claims for mental anguish damages. This is so because the Puerto Rico Supreme Court has clearly stated that when a party's liability appears *prima facie*, that party thus should assume it. Fernández Mariño, 118 P.R. Offic. Trans. at 831. Admitting liability would not have barred the Defendants from raising any issue regarding the amounts that they were liable for. In fact, the supreme court has found obstinacy when "[a] defendant does in fact believe that the amount sought is excessive and that is the only reason to oppose plaintiff's petitions, and does not frankly admit his liability, limiting the controversy to the fixing of the sum to be awarded." Id. at 830 (citing Mercado v. American Railroad Co., 61 P.R.R. 222 (1943); Reyes v. Aponte, 60 P.R.R. 867 (1942)).

In this case, the Defendants are at fault for incurring in precisely that conduct. They could have easily limited the controversy in this case to the issue of whether Plaintiffs' claims for moral and mental anguish were due as a matter of law, yet they denied Plaintiff's averment of facts regarding the engine's failure after October 21, 1995 and stubbornly contested liability based on that denial all throughout the proceedings.

Defendants' refusal to conduct earnest settlement negotiations prior to the complaint in the case at bar is not a ground for this Opinion, since the Court is bound to follow First Circuit precedent indicating that pre-litigation conduct is not relevant for purposes of imposing attorneys' fees as a sanction. Dopp v. Pritzker, 38 F.3d 1239, 1254 (1st Cir. 1994) ("[T]he fact that Pritzker practiced deceit and duress during the events antecedent to the litigation could not trigger Rule 44.").[4]

---

[4] The Court notes however, that the Puerto Rico Supreme Court has ruled that the courts of

**Civil No. 97-1105(SEC)**                                                                 9

However, Defendants' failure to propose a fair and reasonable settlement during the settlement negotiations presided by Judge Ward does reflect stubbornness and constituted a waste of this Court's time and effort.

Moreover, when we consider Defendants' conduct within the context of "the personality" of this case, their stubbornness is even more evident. At trial, the strength of Plaintiffs' case was obvious. After the Defendants defeated Plaintiffs' claims for moral and mental damages, the amounts recoverable by the Plaintiffs were ascertainable from documentary evidence introduced at trial, which was undisputed. It seemed highly probable that the Plaintiffs' were going to prevail on all those claims. It was with that in mind that the parties sat down to negotiate the possibility of a settlement with the aid of the Court. However, Defendants did not propose a reasonable settlement within the circumstances, limiting their proposal to $150,000.00, when the price of the boat in 1995 was $132,500.00. The Judgment finally entered surpassed $200,000.

---

first instance may take into consideration pre-complaint conduct for purposes of imposing on the losing party the payment of attorneys' fees pursuant to P.R. R. Civ. P. 44.1(d). Raoca Plumbing v. Sprinkler Corporation, 114 D.P.R. 464; 114 P.R. Offic. Trans. 595, 599 (1983) (finding obstinacy when losing party hid from the plaintiff in order to avoid service of summons and conspirated with a bank officer to avoid the garnishment of money deposited on his bank account); Pérez Cruz v. Hospital La Concepción, 115 P.R. Offic. Trans. 952, (1984) (confirming the imposition of attorneys' fees on a corporate defendant which had altered documents in its possession prior to Plaintiff's complaint, which were presumably probative of Plaintiff's claim of medical malpractice.); Cf. Fajardo Shopping Ctr. v. Sun Alliance Ins. Co. of Puerto Rico, 81 F.Supp.2d 331, 338 (D.P.R. 2000) (Casellas, J.) (interpreting Raoca "as limited to circumstances where the conduct of the losing party nearly borders on fraud.")

Were this Court to consider Defendants' pre-complaint conduct for purposes of finding obstinacy, it would only add a background to the Court's findings. Standing by itself, the failure to settle a claim prior to filing a complaint, cannot be determinative of obstinacy.

Civil No. 97-1105(SEC)                                                                                                10

### B.  Amount of Attorneys' Fees

Once a court has found that a party has been obstinate, the imposition of attorneys' fees is mandatory. Dopp v. Pritzker, 38 F.2d at 1252 (citing Fernández Mariño, supra). The amount to be imposed will depend on "the degree or intensity of the obstinate or frivolous conduct," which has been determined to be the critical factor in calculating the amount of attorneys' fees imposed. Fajardo Shopping Ctr. v. Sun Alliance Ins. Co. of Puerto Rico, 81 F.Supp.2d 331, 334 (D.P.R. 2000) (quoting Corpak, Inc. v. Ramallo Bros. Printing, Inc., 125 D.P.R. 724, 738 (1990) (Slip Op. P.R. Offic. Trans. at 12)). Other factors taken into account are "the nature of the action, the questions of law involved, the amount at issue, the time spent, the efforts and professional activity needed for the case, and the skills and reputation of the lawyers involved." Fajardo Shopping Ctr., 81 F.Supp.2d at 334 (quoting Corpak, 125 D.P.R. at 738 (Slip Op. P.R. Offic. Trans. at 11-12)). It is clear however, that P.R. R.Civ.P. 44.1(d) does not require that the amount of attorneys' fees imposed by the court match the actual attorneys' fees paid by the prevailing party. Id. (quoting Corpak, 125 D.P.R. at 738 (Slip Op. P.R. Offic. Trans. at 11)).

These standards are very general and in the case of Fajardo Shopping Ctr., supra, the undersigned noted the difficulty in making a determination of the amount to be imposed "by referring to such a general consideration as the degree or intensity of the obstinate conduct, while also taking into account the time spent, and the efforts and professional activity needed for the case, without the aid of any guiding method." 81 F.Supp. 2d at 334 (internal quotation marks omitted). However, this is the legal framework established for this determination.

In this case, the degree and intensity of Defendants' obstinate conduct was significant, although not extreme. It did result in a litigation which could have been avoided, and made the

**Civil No. 97-1105(SEC)**                                                            11

Plaintiffs incur significant expenses for purposes of prosecuting this case, even after a settlement conference was held in the middle of the trial, when it seemed highly probable that the Plaintiffs would prevail and when the amount they would recover was ascertainable.

On the other hand, the Defendants were successful in defending from Plaintiffs' claim of mental anguish. The amount Plaintiffs finally obtained by the Judgment is around $200,000 (after computation of interest). (Docket #93). Their expenses in attorneys' fees totaled $90,656.25. Plaintiffs' attorneys filed a successful opposition to the Co-defendants motions for summary judgment, conducted extensive discovery, were present at several settlement negotiations and prepared for and litigated the case at trial. Bearing in mind that the Defendants were justified in disputing Plaintiffs' claims for mental damages, some of those fees cannot be considered for purposes of imposing the payment of attorneys' fees. In addition, although obstinate, Defendants' conduct was not extreme, it did not border on fraud, and the litigation itself did not extend beyond that to be expected of similar cases which go to trial. Therefore, instead of imposing upon the Co-defendants the payment of the total amount incurred by the Plaintiffs on attorneys' fees, the Court shall reduce that amount to roughly a third of the total costs incurred. Accordingly, Plaintiffs' motion to amend the judgment, **(Docket #95)**, is **GRANTED IN PART AND DENIED IN PART**. The Co-defendants are jointly liable to the Plaintiffs for the payment of **$30,000.00 in attorney's fees**.

       **SO ORDERED.**
       In San Juan, Puerto Rico, this  15TH  day of December, 2000.

                                                SALVADOR E. CASELLAS
                                               United States District Judge